UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR11-5566 BHS |
| Plaintiff, | ORDER |
| v. | |
| TITUS DION PETERSON, | |
| Defendant. | |

THIS MATTER is before the Court on Defendant Titus Dion Peterson's second motion for compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1), Dkt. 284.

Because Peterson has established that the Bureau of Prisons (BOP) has not provided the specialized care necessary to manage his type I diabetes, and because the 18 U.S.C. § 3553(a) sentencing factors support the requested reduction, the Court grants Peterson's motion.

## I.   BACKGROUND

Following a three-day bench trial, the Court found Peterson guilty on one count of Conspiracy to Distribute Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846; three

ORDER - 1

counts of Possession of Cocaine Base with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and 18 U.S.C. § 2; one count of Possession of Cocaine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; one count of Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. §§ 924(c)(1)(A), 2; one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1), (2); and one count of Tampering with a Witness in violation of 18 U.S.C. §§ 1512(b)(1), (b)(3). Dkts. 112, 163. On June 3, 2013, the Court sentenced Peterson to 240 months of imprisonment followed by eight years of supervised release. Dkts. 209, 210. Peterson is currently serving his sentence at a Care Level 3 facility for individuals with complex medical conditions in Sumterville, Florida. Dkt. 284 at 3. He is scheduled to be released on October 3, 2029. *Id.*

This is Peterson's second motion for compassionate release. Dkt. 284. In his first motion in 2023, Peterson argued that BOP was either unable or unwilling to adequately address his type 1 diabetes. Dkt. 262 at 1–2. He asserted that BOP's failure to provide adequate medical treatment resulted in large swings in his blood sugar, heart issues, loss of consciousness, need for emergency care treatment, and an overall "deteriorating physical condition." *Id.* at 2. The Court denied his motion, concluding that Peterson failed to establish that he had been denied access to healthcare or that BOP had adequately managed his diabetes. The Court explained that Peterson's refusal to receive medication and medical care weighed against the existence of extraordinary and compelling reasons warranting release. Dkt. 270 at 5–6. The Court also concluded that Peterson's claim was more properly pursued through a civil suit or habeas petition. *Id.* at

6. The Ninth Circuit affirmed the Court's ruling. Dkt. 281; *United States v. Peterson*, No. 23-0323 (9th Cir. 2024).

In this second motion, Peterson argues that there have been "several material changes" since the Court denied his first request. Dkt. 284 at 2.  He notes that in November 2023, the Sentencing Commission revised its sentence reduction policy statement to make the guidelines binding for defendant-filed motions for compassionate release and expanded what qualifies as an "extraordinary and compelling" reason to include the "medical circumstances of the defendant." *Id.* He also asserts that the Court now has the benefit of a medical expert, Dr. David Hellerstein, who reviewed Peterson's records and determined that BOP's care of Peterson has been "atrocious" and a violation of the standard of care. *Id.* He asserts that BOP's poor medical care has caused him organ damage and placing him at an increased risk for hyperglycemic crisis. *Id.* at 2, 9.

The Government opposes Peterson's motion, contending that despite BOP's attempts to manage his diabetes, Peterson's diet and exercise exacerbate his medical issues. Dkt. 298 at 1. The Government asserts that BOP has repeatedly counseled Peterson on nutrition and exercise, provided him with a glucose monitor and regular blood-glucose checks, administered insulin and diabetic snacks, and moved him to a level three care facility. *Id.* at 8. The Government contends that no amount of medical care can make up for Peterson's actions impacting his health. *Id.* It further contends that Peterson's sentence was justified under the § 3553(a) sentencing factors by, among other things, the nature and circumstances of his drug offenses, his criminal history, and the

need for the sentence imposed to reflect the seriousness of the offense, deter similar conduct, and protect the public. *Id.* at 11.

The issues are discussed in turn.

## II.  DISCUSSION

Generally, courts are not permitted to modify a term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c). Congress, however, created a "narrow exception" when it enacted 18 U.S.C. § 3582(c)(1)(A)(i) authorizing courts to grant compassionate release when "extraordinary and compelling reasons" warrant a sentence reduction. *United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025) (citation modified). For the statute's first 30 years, only the BOP Director could file a motion for compassionate release on a defendant's behalf. *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). In 2018, Congress amended § 3582(c)(1)(A) to permit defendants to seek compassionate release directly from the court, provided they first exhaust administrative remedies. First Step Act, Pub. L. 115-391, Title IV, § 603(b), 132 Stat 5239 (2018); *see United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025).

When interpreting the First Step Act, the Ninth Circuit held that although courts must consider the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13, when considering BOP-filed motions, that policy did not extend to defendant-filed motions. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam). As a result, courts could independently determine what constituted extraordinary and compelling reasons for compassionate release in such cases. *Bryant*, 144 F.4th at 1124.

ORDER - 4

That changed in 2023 when the Sentencing Commission revised the policy statement to govern compassionate release motions filed by defendants. *See* Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28256 (May 3, 2023). The Commission also added a new provision recognizing an extraordinary and compelling reason where a defendant "suffer[s] from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* at 28254; *see* U.S.S.G. § 1B1.13(b)(1)(C). Courts are now "bound by" § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A). *Bryant*, 144 F.4th at 1124.

To be eligible for compassionate release, a defendant must demonstrate: (1) that they exhausted administrative remedies[1]; (2) an extraordinary and compelling reason that warrants a sentence reduction; (3) that the reduction is consistent with the Commission's policy statement; and (4) that the 18 U.S.C. § 3553(a) sentencing factors support the requested sentence reduction under the particular circumstances of the case. *United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022). A court may deny compassionate release if a defendant fails to satisfy any of these grounds. *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022).

[1] The Government does not dispute that Peterson exhausted his administrative statutory requirement by seeking compassionate release from the facility warden prior to filing this motion. Dkt. 298 at 5 n.1. However, it confusingly contends that Peterson fails to comply with the administrative exhaustion requirements necessary to file a § 1983 claim. Dkt. 298 at 9. Peterson has not filed a § 1983 claim so those requirements do not apply.

ORDER - 5

Peterson argues that BOP failed to provide him with adequate specialized care for his type I diabetes. Peterson's retained medical expert, Dr. Hellerstein, reports that Peterson's "diabetes mellitus has been and remains markedly uncontrolled." Dkt. 286 at 2. Dr. Hellerstein opines that "[t]o a reasonable degree of certainty, this has resulted in avoidable damage to Mr. Peterson's multiple organ systems." *Id.* Dr. Hellerstein further reports that while in custody Peterson maintained his target blood sugar less than one third of the time and that he is "managed on an insulin regimen which is not appropriate clinical practice." *Id.* at 9.

Peterson acknowledges that he has repeatedly not complied with BOP's attempts to administer his medical care but explains that his insulin refusals were primarily caused by BOP's inaction in not checking his blood sugar before administering the insulin. Dkt. 284 at 6. He asserts, however, that even if his own behavior is contributing to his diabetes-related medical issues, it does not absolve BOP providers from providing the appropriate standard of care. Dkt. 302 at 4. Peterson points to Dr. Hellerstein's conclusion that BOP failed to provide the specialized standard of care in multiple ways, including by failing to adequately respond, evaluate, and monitor Peterson when his blood sugar was dangerously high and failing to modify Peterson's insulin regimen to meet the current standard of care. Dkt. 303 at 3.

The Government argues that "Peterson is receiving care from [BOP] for his condition." Dkt. 298 at 8. It asserts that BOP repeatedly counseled Peterson on nutrition and exercise, provided him with a glucose monitor and regular blood-glucose checks, administered insulin and diabetic snacks, and moved him to a level three facility. *Id.* It

also notes that BOP adjusted Peterson's insulin levels at his request. *Id.* More significantly, the Government contends that Peterson's own eating habits are responsible for his medical issues. It notes that Peterson's commissary list was "full of carbs and sugary foods, including strawberry and chocolates cookies, which significantly raise blood sugar." Dkt. 298 at 8.

Although the Government points to several ways that BOP is managing Peterson's diabetes, it fails to argue or demonstrate that its efforts meet the standard of care required for treating such a "complex" case. *See* Dkt. 284 at 2. The relevant question is not whether some "care" has been provided, but rather whether that treatment is medically sufficient. According to Dr. Hellerstein, BOP's medical care falls short. Dr. Hellerstein reports that BOP failed to monitor and correct Peterson's high blood sugar and repeatedly failed to properly document the amount of insulin he received. Dkt. 303 at 3–4. Dr. Hellerstein also emphasizes that BOP never documented that Peterson's diet or lack of exercise were contributing to his uncontrolled sugars. The Government's response does not offer an expert to rebut Dr. Hellerstein but relies on the medical records only.

The Court concludes that Peterson has met his burden of establishing that BOP is not providing the specialized medical care necessary to treat his diabetes and that, as a result, he has suffered serious harm. Under § 1B1.13, Peterson has therefore established an extraordinary and compelling reason warranting relief.

That is not all that the Court must consider. To be eligible for compassionate release, Peterson must also find (1) that the defendant does not present a danger to others and the community, and (2) that the reduction be appropriate after considering the §

3553(a) factors. U.S.S.G. § 1B1.13; *see Wright*, 46 F.4th at 945 ("Even if a district court identifies an extraordinary and compelling reason, it may not grant relief unless the § 3553(a) factors support the reduction."). The factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence imposed (i) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (ii) to adequately deter criminal conduct and "to protect the public from further crimes of the defendant," and (iii) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," (4) the sentencing guidelines, and (5) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Peterson acknowledges that his offenses were serious and that he has a lengthy criminal history but contends that he is now 14 years removed from the conduct that led to his imprisonment and that the likelihood of recidivism drops with age. Dkt. 284 at 15. He also emphasizes that the recidivism rate for individuals released pursuant to a compassionate release motion is much less than those generally released from BOP. *Id.* Peterson contends that he was sentenced to an unusually long sentence for an offense that did not include violence and that any risk to the public can be adequately mitigated with appropriate release conditions. *Id.* at 16; Dkt. 302 at 6. He further contends that incarceration in his condition would cause irreversible harm and would not serve the purposes of punishment set forth in § 3553(a)(2). Dkt. 284 at 16.

The Government contends that the nature and seriousness of Peterson's offenses, including his lengthy criminal history, his drug trafficking convictions, firearm possession, and attempts to obstruct justice, weigh against a sentence reduction. It also argues that nothing in Peterson's post-sentence history supports a sentence reduction. Dkt. 298 at 10. It recites almost verbatim the same disciplinary history that it relied on two years ago when opposing Peterson's first motion for compassionate release. *Compare* Dkt. 265 at 10–11 *with* Dkt. 298 at 10–11. It notes that in 2021–2022, Peterson was cited for fighting, misusing Tylenol with codeine, refusing to obey an order, being insolent to staff, and using abusive or obscene language. Dkt. 298 at 11; *see* Dkt. 265, Ex. B; Dkt. 267, Ex. A.

This is a close question. The Court acknowledges that the seriousness of Peterson's convictions and his poor disciplinary history while in custody weigh against a sentence reduction. However, the Government has not submitted evidence of any disciplinary infractions in the last three years. In addition, the Court is persuaded that the sentence imposed is sufficient to deter criminal conduct, protect the public, and adequately rehabilitate the defendant. Peterson has served over fourteen years of custody—a time in which his health has unquestionably deteriorated. See Dkt. 286 at 2 (Peterson's diabetes has remained "uncontrolled." He has been "diagnosed with neuropathy, heart disease, and diabetic nephropathy (diabetic kidney damage)."). Peterson is now significantly older than when he first committed the offense, and the Court must consider Peterson's urgent need for adequate medical care. *See* 18 U.S.C. § 3553(a). Because the Government fails to show that BOP is doing more that providing

ORDER - 9

Peterson merely with "care," specifically, that its medical treatment meets the applicable *standard of care*, the Court finds that this factor weighs in favor of compassionate release.

The Court also finds that any risk to the community from Peterson's potential recidivism is adequately mitigated by supervision. As part of Peterson's sentence, the Court imposed eight years of supervised release with standard and special conditions. *See* Dkt. 21. His term of supervision shall commence immediately upon release.

The Court concludes that the § 3553(a) factors support Peterson's sentence reduction.

### III.  ORDER

The Court concludes that Peterson has met his burden to establish an extraordinary and compelling reason warranting relief, that the reduction is consistent with the Commission's policy statement, and that the 18 U.S.C. § 3553(a) sentencing factors support the requested sentence reduction under the particular circumstances of this case. On his release, Peterson will be subject to his original standard and special supervised release conditions. Dkt. 210.

The Court also imposes an additional mandatory condition. Peterson shall participate in the location monitoring program with Active Global Positioning Satellite technology for a period of 6 months. Peterson is restricted to his residence at all times except for employment, religious services, medical, legal reasons, or as otherwise approved by the location monitoring specialist. He shall abide by all program

ORDER - 10

requirements, and must contribute towards the costs of the services, to the extent financially able, as determined by the location monitoring specialist.

It is hereby **ORDERED** that Defendant Titus Dion Peterson's motion for compassionate release, Dkt. 284, is **GRANTED**.

Dated this 20th day of February, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 11